# CASES ARGUED AND DETERMINED

IN

# THE SUPREME COURT,

## JANUARY TERM, 1855.

WILLIAM M. BURGOYNE, Appellant, v. The Board of Supervisors of the County of San Francisco, Respondents.

The Legislature has no power to confer other than judicial functions upon the Courts of Sessions.

APPEAL from the Superior Court of the City of San Francisco.

This was an action brought to recover the amount due on certain warrants, drawn by the County Auditor on the Treasurer of the County of San Francisco, which warrants were issued by an order of the Court of Sessions of that county, to pay for a lot purchased by order of the Court of Sessions of said county, in the year 1850.

On or about the 20th day of June, 1850, the Court of Sessions of San Francisco County, sitting for the transaction of county business, entered into a contract with Edmund Laffan, Daniel W. Coit, and Charles A. Gurley, for the purchase of a lot in the City of San Francisco, for the erection of public buildings for the use of the county, and agreed to pay, as the consideration of said lot, the sum of $60,000; in two equal annual instalments, with interest at the rate of three per cent. per month, payable semi-annually.

It was further agreed, that the principal sum of $60,000 should be paid in sums of not less than $5,000 each, bearing interest at the rate

aforesaid; for which sums and in which amounts, the county should issue its scrip in the name of said Court; also, that Laffan, Coit, and Gurley, should convey such lot to the County Judge and the Associate Justices of said Court, and to their successors in office, in trust and for the use of said county; and that the County Judge and the Associate Justices should officially execute and deliver to Laffan, Coit, and Gurley, a mortgage upon the said premises to secure the purchase money and interest.

Said deed and mortgage were duly delivered on the 20th day of June, 1850, and at a regular term of said Court, held on the 22d day of June, 1850, an order was duly entered of record in the usual Record Book of said Court for county business, reciting the terms of said contract. Shortly after the sale of the lot, the county officers took possession of the buildings thereon, and occupied a portion thereof for county purposes. Afterwards, at a regular term of said Court, it was ordered by the Court that the County Auditor issue his drafts upon the County Treasurer in favor of Laffan and Coit or order, for the payment of the purchase money, in pursuance of the agreement.

On the 15th day of November, 1850, John A. McGlynn, the County Auditor, issued his drafts on the Treasurer of said county for the several sums above mentioned; all of which sums, as expressed on the face of said orders, were payable out of the "Building Fund," and were "on account of the purchase money for the site of the county buildings, and in lieu of so much scrip heretofore issued and now received and cancelled by order of the Court of Sessions."

These warrants were duly presented to the County Treasurer, and payment demanded and refused. Afterwards, the drafts were respectively endorsed and delivered by Laffan and Coit, to the plaintiff, who, at the commencement of this suit, was a *bona fide* holder for value. The case was referred by consent, and judgment entered, upon the report of referee, for defendants. The Court overruled a motion for a new trial; and plaintiff appealed.

For Appellant, *Bates, Lawrence & Hastings*, and *Gregory Yale*.

The Court of Sessions had full power to make the purchase, and to make payments therefor on credit, and to give the necessary liabilities against the county, subject only to the restrictions that the purchase

was *necessary*, and that it had been made in good faith, and pursuant to the statutes of the State then in force. Stat. 1850, pp. 176, 211.

The Court of Sessions, in the year 1850, being empowered by the Legislature, could constitutionally perform the functions of a county government.

I. The question is, as to the extent of the powers of the legislative body of the State.

It is scarcely necessary to remind the Court, that the Senate and Assembly, constituting the legislative body, have all legislative power, save in so far as such power has been restricted by the Constitution of the United States, or by the Constitution of this State.

It cannot be pretended that the Constitution of the United States has any connection with, or bearing upon, the question under discussion. It is, therefore, dismissed without further remark.

The legislative body, then, could, as an ordinary act of legislation, confer the power denied, upon the Court of Sessions, unless prohibited by the Constitution of this State, either expressly or impliedly.

There can be found no such prohibition in express terms, and we maintain that no such prohibition exists by necessary implication,—for it must be a necessary implication, in order to take away the otherwise undoubted power.

II. The Constitution of this State does not prohibit the Legislature from conferring upon the Court of Sessions power to perform the functions of a county government.

1st Sub. No portion of the judicial power of the State is vested by the Constitution in the body therein designated as the Court of Sessions.

Article VI, section 1, declares that "The judicial power of this State shall be vested in a Supreme Court, in District Courts, in County Courts, and in Justices of the Peace," and in such "municipal and other inferior Courts" as the Legislature should deem necessary and establish; and then section 8 of the same article declares that the County Judges, with two Justices of the Peace, shall hold Courts of Sessions.

The Court of Sessions is not embraced in either class of Courts enumerated in section 1, in which alone the entire judicial power of the State is vested by the Constitution. It is not the Supreme Court, nor a District Court, nor a County Court, nor a Justice of the Peace, nor

a municipal or other inferior Court established by the Legislature; consequently no portion of the judicial power known to the Constitution is vested, or can be vested, in the Court of Sessions.

2d Sub. Neither is any portion of the legislative power of the State vested by the Constitution in the Court of Sessions—for article IV, section 1, of the Constitution, says: "The legislative power of this State shall be vested in a Senate and Assembly, which shall be designated the Legislature of the State of California," &c.

3d Sub. Neither is any portion of the executive power vested in the Court of Sessions by the Constitution,—for article V, headed "Executive Department," prescribes in whom the executive power of the State shall be vested, and the Court of Sessions is not mentioned in that article.

No portion then of the various "powers" defined by the Constitution respectively as legislative, executive, and judicial, being vested by the Constitution in the Court of Sessions, it necessarily follows that the Court of Sessions, created by the Constitution, is not, and cannot possibly be, embraced within either, the words, meaning, or intent of the constitutional prohibition contained in article III, which declares that "The powers of the Government of the State of California shall be divided into three separate departments—the Legislative, the Executive, and Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases hereinafter expressly directed or permitted;" which prohibition is the only one found in the Constitution.

Consequently, the Constitution does not prohibit the Legislature to clothe the Court of Sessions with the powers or functions of a county government, which was our second point; and this being taken in connection with our first, that all legislative power not taken away by the Constitution remains with and belongs to the Legislature, it follows that the Legislature may, as an ordinary act of legislation, vest the Court of Sessions with the functions of a county government; and this establishes the answer to the first question proposed in the outset, in the affirmative.

But the same conclusion will be arrived at in another way:

I. That the body in question being designated in the Constitution as

a Court of Sessions, cannot change the nature of the case, for it does not follow, that, because it is called a " Court," it must have judicial functions.

For the Parliament of Great Britain is called the " Court of Parliament," (*Curia Parliamenti,*) 4 Coke Inst. 2, 50; Branch's Principie, 33 verb. "*Curia Parliamenti;*" 5 Com. Dig. 184, (A,) Bac. ab. Title, " Court of Parliament;" and this Court consists not merely of the Lords in their judicial capacity, but of the King, Lords, and Commons, in their ordinary legislative character. (Bac. and Com. as above cited.)

Thus the Colonial Legislatures of several of the States, before our independence, were termed " Courts;" also, after our independence, the legislative body was designated in several of the Constitutions by the name of " Court,"—as in that of Massachusetts, (see Const. of 1789, chap. 1, sec. 1, art. 1, 3, and 4; chap. 1, sec. 2, art. 1; chap. 6, art. 8; also in amendments to same Const., art. 1, 2, 8, and 9;) as also in that of New Hampshire, (it was styled) " The General Court of New Hampshire," (Const. of 1792, part II, sec. 1, 2, 3, 4, and 5;) as also in Charles II Charter to Rhode Island, paragraph 12, in which it is styled the " General Court of Assembly;" as also the County Commissioners in Illinois are styled a " Court," (1 Breese's Reports, 196, and Appendix 13,) though clearly not possessing one judicial function; and the County Commissioners in Indiana are a " Court of Record," (5 Blackford, 325.)

No inference, therefore, can be drawn from its being called a Court of Sessions, that it was the intent of the Constitution to clothe it with "judicial powers" only. Had it been styled Sessions, or the Quarter Sessions, or Sessions of the Peace, or by any other name, it would not affect the nature, character, powers, or functions of the body of the thing itself, or the power of the Legislature to extend its legislative control over it.

II. In many of the States where Constitutions contain provisions identical with those contained in article III of the Constitution of this State, judicial powers will be found united in the same body with executive, or, rather, *administrative* powers; for these powers should, more properly, be termed *administrative* than executive powers.

Thus, in the Constitution of Massachusetts (Const. of 1779, part 1,

sec. 30) will be found the same provisions and prohibitions contained in article III of our own. Yet the Court of Sessions of that State exercised many powers other than judicial. They estimated the damages sustained by the owner of land over which a highway was laid out; (2 Mass. R., 7.) The County Court, possessed of certain judicial functions, had also the jurisdiction in the laying out of roads from town to town, (id. 13; 7 Mass. R., 158, 162;) as did also the Court of Sessions, (13 Mass. R., 394,) and in N. Hampshire v Franklin (16 Mass. R., 76) it was held that the Court of Sessions were to be considered as the agents and representatives "of the county, in all matters touching its finances and general and prudential concerns," and that " their acts and admissions were binding upon the inhabitants;" and in Commonwealth v. Sessions of Hampden, (2 Pick. 415,) it was held to be " peremptory on the Courts of Sessions in each county to erect or provide a house of correction," and that a mandamus would lie to compel them to do it, a case strikingly analogous to the one at bar; so also the same Court of Sessions was authorized to establish ferries, (15 Pick. R., 243,) and the powers now possessed by the County Commissioners have been at different times vested in the General Sessions of the Peace, the Court of Sessions, the Court of Common Pleas, and the Commissioners of Highways. (20 Pick., 482 )

In Maine, the same provision exists in the Constitution as article III in our own, (see Const. of Maine, 1819, art. 3, secs. 1 and 2,) and yet the Court of Sessions there lay out roads, and assess and levy taxes afterwards, to keep such roads in repair. , (3 Greene, 131; 9 id., 88, and 98.)

In Tennessee, the same constitutional provision exists, (see Const., art. 2, secs. 1 and 2;) yet here, Justices of the Peace being an acknowledged part of the judicial power. transact all county business by virtue of powers conferred by the Legislature, (Mart. and Yerg., 36,) and receive and appropriate the moneys of the county. (id. ibid.)

In Virginia, the same constitutional provision exists, (Virg. Bill of Rights of June 12, 1776, sec. 5, and Const. of 1830, art. 2.) Yet there County Courts are required to build bridges across public roads, and in case of neglect, a mandamus will lie to compel them, (5 Call, 548; id. 556.) So also they have power to impose county levies—no judicial function, surely, (5 Call, 139; 1 Hawks, 408;) so also to build

court-houses and jails, (3 Munf., 102;) also to correct errors of commissions of the revenue. (2 Virg. Cases, 258.)

In Alabama, the constitutional provision exists, (Const. of 1819, Art. II,) yet there the power to authorize the erection of toll bridges, (surely not a judicial function) exists in the County Courts, (2 Park, 296;) so, also, power to license ferries. (id.)

In Mississippi, the same constitutional provision is found, (Const. 1817, Art II, sec. 1 and 2,) yet there the County Court has authority to settle and allow all claims against the county, and to levy a tax for the payment of such claims; and may be compelled by mandamus. (Walker's Reports, 523 )

In New Hampshire, the same constitutional provision exists, (Const. 1792, Bill of Rights, sec. 37,) yet there the Court of Common Pleas is vested with the power of laying out highways. (7 New Hamp. Rep., 280; 5 id, 558; 6 id, 524.)

In Kentucky, the same, (Const. 1799, Art. I, §§ 1 and 2;) yet there the county tax is levied by judicial officers (6 Litt., 223.)

In Connecticut, the same, (Const. of 1818, Art. II;) yet there the County Court has power to act in the demise of the county house. (4 Conn., 305.)

In North Carolina, the same in effect, (Const. of 1776; Declaration of Rights, sec. 4,) yet these have the erection of toll bridges under their charge. (3 J., 412.)

In Vermont, (Const. 1793, chap. 2, sec. 6;) in Maryland, (Const. 1796, Declaration of Rights, sec. 6;) in Georgia, (Const. 1798, Art. I, sec. 1;) in Indiana, (Const. 1816, Art. II;) in Louisiana, (Const. 1812, Art. I;) in Illinois, (Const. 1818, Art. I;) in Missouri, (Const. 1820, Art. II;)—the same constitutional provisions exist as contained in article III of our Constitution; yet in some of these last-named States, certainly, and it is believed in all, it will be found that some of the functions of county government are entrusted to and exercised by bodies which at the same time possess certain judicial powers.

It will thus be seen, that in the seventeen States above enumerated, exclusive of our own, there has been discovered no constitutional incompatibility in certain public bodies, by whatever name designated, which were vested with inferior and subordinate judicial powers, discharging, in some particulars, the duties of a county government, and also that

such public bodies have commonly been styled County Courts, Courts of Sessions, Sessions of the Peace, or simply Sessions.

The Constitutions of several of the States more recently admitted we have not had an opportunity of examining; but in all probability they contain the same constitutional provision.

It may also be proper to notice, in this connection, that the "Court of Quarter Sessions" in England performs certain powers of a county government, as in the repairing and rebuilding of bridges, &c. (5 T. R. 279.) Our Constitution was framed by persons from many of the States above mentioned, in which "Courts of Sessions" had some of the powers of a county government; and they used the term Court of Sessions in the Constitution, after having adopted article III, with full knowledge of its power and effect, and of the powers which had theretofore been usually given by other State Legislatures to such Courts; and if they had sought to prevent the exercise of such powers by Courts of Session in this State, they would have used language clearly indicating such intentions. This they have not done, but have left the matter in the same position as in the other States, and the presumption is, that they intended and expected the practice would be the same.

The construction of the Constitution contended for was the one given to it immediately after its formation and adoption by the first Legislature, several of the members of which had also been members of the Convention, and conspicuous actors in its proceedings; and the rule of interpretation applies, that contemporaneous exposition is the best and strongest in law, (2 Inst., 11, 6 Bac. abr. 386.)

We have thus endeavored to show: First, By the terms of the Constitution itself; Second, By the practice of other States under like Constitutions; Third, By contemporaneous legislative exposition:— that the "Court of Sessions" may be empowered by the Legislature to perform certain functions in the administration of a county government.

We remark here, in anticipation of an objection that might possibly be raised, that County Judges and Justices of the Peace, acting as such, and not in the capacity of members of the Court of Sessions, are authorized to perform such duties as the Legislature may fix and require. (See Const., Article VI, Sec. 8, last clause, and same article, Sec. 14.)

Article VI, section 8, of the Constitution, says: The County Judge,

with two Justices of the Peace, to be designated according to law, shall hold Courts of Sessions, with such criminal jurisdiction as the Legislature may prescribe, &c., and the maxim "*expressio unius, est exclusio alterius,*" is sought to be applied.

But this would be an erroneous rule of construction. We remark, however, that if it be a just rule of construction in this particular, it must be also applied to section 1 of article VI, which prescribes the persons and bodies in whom the judicial power of the State is vested. Apply the maxim to this section, and it necessarily precludes the Court of Sessions from having any judicial power whatever, and fully establishes the position first insisted upon by us, that the Court of Sessions had no judicial power whatever in the sense in which that term is used in the Constitution.

The chief objection to the applicability of this rule is, it proceeds upon the same error above noticed, as respects the General Government and the State governments. Thus, the grant of one power, and only one, in the United States Constitution, operates as an exclusion of all others; or rather where one power is given, the General Government can take only that one power, because it takes nothing which is not necessarily given, while, as above stated, the legislative power of the State extends to all matters not prohibited. Thus, were we to interpret this clause according to the rules of interpretation of the United States Constitution, the Court of Sessions could have conferred upon it by the legislative power no functions save as to criminal jurisdiction, because there is no capacity to receive any others, expressly given; on the contrary, according to the correct rule of interpretation of State Constitutions, the Court of Sessions has capacity to take all such powers as may be vested in it by the Legislature, and are not expressly prohibited, and therefore the grant of criminal jurisdiction by the Constitution does not take away its capacity to be vested with the functions of a county government.

The provision of the Constitution, (Art. XI, Sec. 4,) authorizing the Legislature to "establish a system of county and town governments," and the provision in section 5, of same article, empowering the Legislature "to provide for the election of a Board of Supervisors in each county," cannot affect the question one way or the other. The Legislature would have possessed all these powers by virtue of being vested

3

with legislative powers generally, without any such express grant or injunction; these are rather commands to the Legislature to do certain things which they already had the power to do, than express grants of any new powers. Section 4 makes it clear that the Legislature might authorize the administration of county governments by other persons or bodies than Supervisors. This they have done by giving such administration to the Court of Sessions. We will here barely remark further, that the establishment of a county government is a different thing from the designation of the persons or bodies by whom such government shall be administered.

The conclusion, then, upon the whole matter, is an answer in the affirmative to the question propounded in the outset.

For Respondents, *Hager & Sharp, Halleck, Peachy, Billings & Park.*

The county is not liable upon the warrants named in the record, for—

First, The Act of the Legislature under which the debt, represented by the warrants, was contracted, is unconstitutional and void.

The Court of Sessions is created by the Constitution, and on received principles of construction, all substantive or primary powers not expressly granted, are withheld.

And furthermore, by Art. III, of the Constitution, all powers not granted are withheld and *prohibited* by positive provision.

Now, the powers conferred upon the Court of Sessions are purely *judicial* in their character; and as the power under which the debt was contracted by the Court was in no sense a judicial power, their authority under the Act of the Legislature of April 10, 1850, fails, and the debt falls with the power.

See the opinion of MURRAY, J., in Swift *v.* Rowe *et al.*

Second, The Act organizing the Court being a public law, all parties are charged with notice of it.

The Court, under this Act, has no *implied powers :* all its powers, and *the mode of exercising them,* are derived from and prescribed by the statute. If the Court, or any other county officer, have exceeded their authority or neglected to clothe their acts with the formalities required by the statute, their proceedings, so far as the County (the principal) is concerned, are void.

The County is the corporation, and the Court and the County Auditor the mere agents:

Angel & Ames on Corp., pp. 19, 20, 21, 229. Brown v. City of Utica, 2 Barb. S. C. R., 104. Sherwood v. Reed, 7 Hill's R., 431. Hodges v. City of Buffalo, 2 Denio, 110. Bright v. Boyd, 1 Story's C. C. R., 487. 12 Wheaton, 64. 2 Cowen & Hill's Notes to Ph. Ev., 1289–90. 1 Story's Eq. Jur., § 96. 13 Mass., 192.

MURRAY, C. J., delivered the opinion of the Court. HEYDENFELDT, J., concurred.

Several questions were raised in the argument of this case, only one of which it is deemed necessary to examine, viz: The power of the Legislature to confer other than judicial functions upon the Courts of Sessions.

The eighth section of the sixth Article of the Constitution of this State, title, "Judicial Department," provides as follows: "The County Judge, with two Justices of the Peace, to be designated according to law, shall hold Courts of Sessions, with such criminal jurisdiction as the Legislature shall prescribe, and he shall perform such other duties as shall be required by law."

The first session of the Legislature, holden under the Constitution, acting, in all probability, without reference to the distribution of the various powers of our State government, as provided in Article III, conferred upon the Courts of Sessions the entire management of the financial business of the counties. Among other duties enjoined, was that of purchase or erection of suitable buildings for court houses and public offices.

In compliance with the Act of April 10, 1850, the contract, out of which has grown the subject matter of this suit, was made.

It is now contended, admitting the contract was fair and equal in all its parts, that it is not binding on the County of San Francisco.

First, Because, by the third Article of the Constitution, it is provided that the powers of the State government shall be divided into three separate departments—the Legislative, the Executive, and Judicial; and no *person* charged with the execution of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in cases expressly directed or

permitted. And second, Because the eighth section of the sixth Article of the Constitution, before quoted, does not confer the exercise of this jurisdiction upon Courts of Sessions, but limits their jurisdiction to criminal cases alone.

In discussing the first proposition, it is only necessary to remark, that in the previous decisions of this Court, we have repeatedly alluded to the distribution of powers by the Constitution, as a leading feature, never for a moment lost sight of by its framers, but carefully preserved for the purpose of maintaining the integrity of the different departments *intact*, and securing the harmony and symmetry of the whole, by restraining each to its particular orbit.

The history of almost every nation is replete with struggles between the judicial, the executive, and legislative branches of government for unlimited supremacy, and demonstrates, that unless curbed by wholesome constitutional restrictions, each department will, in its turn, encroach upon and interfere with the functions of other co-ordinate branches of government. This spirit of usurpation and encroachment has been more frequently directed towards the judiciary than any other department. In England, it was only determined by resort to civil war, which resulted in the establishment of the entire independence of the Judiciary, as well as the Commons, while in this country, it has been avoided by the enlightened wisdom and experience of the framers of our Federal and State Constitutions.

Acting upon this understanding, our Constitution was designed to secure the same uniformity and harmony of operation; and we do not know how the Convention that framed it could have expressed that intention more intelligibly.

A recurrence to the origin and reasons that induced this distribution of powers, would seem conclusive upon this case, in which the Legislature have imposed upon a Court ordained by the Constitution for the transaction of criminal business, powers belonging to the executive and legislative departments of government not even *quasi* judicial in their character.

It is, however, urged by the Appellant in reply, that the Court of Sessions has not been vested by the Constitution with any of the judicial power of the State. That the sixth Article of the Constitution, title, "Judicial Department," provides, That the judicial power of the

State shall be vested in a "Supreme Court, District Courts, County Courts, and Justices of the Peace."

The Legislature may also establish such municipal and other inferior Courts as may be deemed necessary. That inasmuch as this section does not enumerate "Courts of Sessions," they are no part of the judicial department, and the Legislature, in the exercise of all powers not denied by the Constitution, may invest them with such jurisdiction as may be deemed proper.

This is a narrow and forced construction, and one which cannot be supported. If the Courts of Sessions are not to be regarded as a part of the Judiciary, what becomes of the criminal jurisdiction conferred by the Constitution. We can only determine to what branch of the government they belong, by the character of their officers, and the nature of the duties enjoined. Here is a "*Court,*" over which three judicial officers, known as such to the Constitution, are appointed to preside and administer, with such criminal jurisdiction as the Legislature may provide.

Now, if the first section of the sixth Article necessarily limits the judicial power to the Courts therein mentioned, by parity of reasoning, the first section of the fourth Article, and the first section of the fifth Article, which define in what the legislative and executive power of the State shall consist, operate a like limitation, from which it would follow, that inasmuch as Courts of Sessions are not specially enumerated in either of these sections, they belong to a fourth or nondescript branch of the government, upon which any and every power may be conferred, uncontrolled, except by the wisdom of the Legislature, notwithstanding that the third Article has divided the powers of the State into three departments.

There is another view of this question, which, I apprehend, is conclusive. Not only does the Constitution forbid the exercise of the functions of one department by any other department, but it has gone further, and to secure the complete integrity of each, has, by the third Article, expressly forbid "*persons charged* with the powers of one, from exercising duties properly belonging to another department;" from which it follows, no duties, except of a judicial character, can be conferred on the Courts of Sessions, inasmuch as the officers composing

these Courts are persons charged by the Constitution expressly with the performance of judicial functions.

Upon the second point it is equally clear, that the eighth section of the sixth Article necessarily limits the jurisdiction of these Courts to criminal business. Affirmative words often import a negative, except as to the matter so affirmed; in the present case, the grant of criminal jurisdiction negatives any other, just as much as that of appellate to the Supreme, or original to the District Courts, limits the jurisdiction of these Courts, (as has before been decided by us.)

If any doubt could exist as to the propriety of this construction, it might be easily resolved by an examination of the sixth Article of the Constitution, from which it appears that more than ordinary care has been expended in parcelling out the exact judicial powers of each Court. The argument is also strengthened by the fact, that the fifth section of the ninth Article expressly provides for a Board of Supervisors in each county, " who shall jointly and individually perform such duties as may be prescribed by law. Constitutions seldom contain redundant or irrelevant matter; and if the framers of ours had understood that the eighth section of the sixth Article provided for the exercise of these powers, it is hardly to be supposed that they would have needlessly committed them to any other board or tribunal.

It is, however, contended, admitting that these duties cannot be enjoined upon a Court, they may be conferred on the Judges thereof as Commissioners, and that the exercise of them, by the Judges as commissioners and not as judicial officers, would not be unconstitutional. The first answer to this position has been already stated, viz: That the officers composing the Court of Sessions are judicial officers, and consequently are forbidden from exercising any other functions. And second, that the Act of April 10, 1850, confers these duties upon the Court in direct words, and not upon the members as Commissioners. A question similar to this arose in the case of the United States *v.* Yale Todd, reported in 13 Howard, in a note to the case of the United States *v.* Firriera, page 52, in which the same doctrine was affirmed.

It will be observed, that the language of the Constitution is not, that *they*, the County Judges and two Justices, " shall perform such other duties," &c., but " *he* shall"—marking more explicitly, if possible, the intention of the Convention. But even were it otherwise, and the

word *they* had been used, we have shown, that by every well settled rule of construction, as well as the scope and spirit of the instrument itself, the other duties so mentioned must be limited to those of a judicial character.

We have considered the argument drawn from cotemporaneous legislative construction, as well as the recognized legal proposition, that in doubtful cases every intendment should be in favor of the constitutionality of legislative enactments; but these axioms only apply in cases of doubt. In this instance we have none.

This question was recently decided by the Judge of the Sixth Judicial District, in an able and well considered opinion, in which the same views are taken, and which meet with the almost uniform approbation of the Bench and the Bar.

Judgment affirmed, with costs.