# S. CLINTON HASTINGS *v.* THE CITY AND COUNTY OF SAN FRANCISCO.

BOARDS of Supervisors cannot be sued in their official character, in ordinary common law actions, for claims against the public, county or village they represent, without express statutory provision.

A judgment obtained in April, 1854, against the Board of Supervisors of San Francisco county, in an ordinary common law action, was not a judgment against the former county of San Francisco.

The Act of 1851 creating the Board of Supervisors of San Francisco county, and authorizing the Board "to sue and defend on behalf of the county," did not authorize the Board to bring suits on behalf of the county in its own name; nor did it render the Board liable to be sued directly for a claim against the county.

Liability to suit has no necessary connection with ability to sue. Boards of Supervisors and bodies like them, without any legislative provision—by general law—are subject, with certain exceptions, to *mandamus* to enforce the performance of the duties devolved upon them, and to the writ of *certiorari*, for the review of their acts when partaking of a judicial character, and in other ways are within the control of judicial proceedings.

*Hunsacker* v. *Borden* (5 Cal. 288) and *Burgoyne* v. *The Supervisors of San Francisco* (5 Cal. 9) commented on.

APPEAL from the Twelfth District.

The facts appear in the opinion of the Court. Defendant had judgment, and plaintiff appeals.

*Heydenfeldt & Shafter*, for Appellant.

I.   The State Constitution, art. 4, sec. 33, provides, that "all corporations shall have the right to sue, and shall be subject to be

sued in all Courts, in like cases as natural persons." The Act of April 22d, 1850, concerning corporations, also provides in section one—" every corporation, as such, has power to sue and be sued in any Court." If, then, the Board of Supervisors is a corporation, it is liable to be sued.

Section thirty-one of article four of the Constitution provides, that " corporations may be formed under general laws, but shall not be created by special act except for municipal purposes." The term " corporations" in this section is applied to two kinds of corporations, to wit: private and public or municipal. Under it private corporations can only be created by general laws, but public or municipal corporations may be created by special act. Section thirty-three of the same article declares that: " The term corporations as used in this article, shall be construed to include all associations and joint stock companies having any of the powers or privileges of corporations not possessed by individuals or partnerships." Now the Board of Supervisors is an association having many of the powers and privileges of corporations not possessed by individuals, and must therefore fall within the description in the Constitution, which makes them corporations.

This conclusion cannot be avoided by construing the term "associations" to mean companies for commercial or trading purposes. The term "joint stock companies" is sufficiently comprehensive for every purpose of a private corporation. The provision cited was intended to apply to all of that class of political bodies which at common law, and in other States, are denominated *quasi* corporations. We have our Boards of Pilot Commissioners for every port in the State; Boards of Port Wardens; Board of State Prison Commissioners; Boards of Commissioners to regulate Water Courses; Board of Trustees for the Insane Asylum; for Deaf and Dumb; Commissioners of the State Capitol; Commissioners of Stamp Duties; Commissioners to dispose of land. All of these are associations having powers and privileges not belonging to individuals. They are corporations *sub modo* at common law, and were intended to be corporations by the provisions of the Constitution. They are each and all of them municipal in their nature and created by special acts.

Again: section four of article eleven of the Constitution says:—
" The Legislature shall establish a system of county and town gov-
ernments, which shall be as nearly uniform as practicable throughout
the State." Section five says: " The Legislature shall have power
to provide for the election of a Board of Supervisors in each county,
and these Supervisors shall jointly and individually perform such
duties as may be prescribed by law." No distinction is made in
section four between county and town. The Legislature passed an
act to govern towns by a system of self incorporation. They also
passed the act to govern counties by Boards of Supervisors, as em-
powered to do by section five. The Board of Supervisors was
then the county government, with the same powers for the regula-
tion of their municipality as the mayor and aldermen possessed to
govern the towns. Indeed, their powers were greater, as they nec-
essarily extended over towns as well as counties, and the very
nature of these powers necessarily constitutes them corporations.
They have perpetual succession, are authorized to contract debts
and liabilities, and " to sue and defend" on behalf of the county,
and it is difficult to see what other powers are necessary to consti-
tute a corporation, either at common law or under the provisions of
the Constitution.

II. But if they are not corporations by virtue of the Constitu-
tion, they are so by the rules of the common law.

In *Denton* v. *Jackson* (2 Johns. Ch. 325) the Chancellor says:
" There is no particular form of words requisite to create a corpor-
ation. A grant of a rent to a chaplain and his successor and a
grant to a body of men to hold mercantile meetings, has been held
to confer a corporate capacity." (10 Co. 27, 28, 30.)

Angell and Ames on Corporations, say : " No precise form of
words is necessary to create a corporation, and if the words ' found,'
' erect,' ' establish ' or ' incorporate' are wanting, it is not material,
for the assent of Government may be given constructively or pre-
sumptively without such words." (See the various cases put, Ang.
& Ames on Corp. sec. 76.) Whenever the legislative power creates
a body, gives it a name, provides for its perpetual succession, and
confers upon it powers and privileges which are not possessed by
individuals, it creates a corporation, whatever may be the language

Hastings *v.* City and County of San Francisco.

used by its act in other respects; and under the general law it has power to sue and be sued.

III. But if these bodies are not complete corporations, then they are *quasi* corporations, and as such entitled to be sued on behalf of the constituent which they represent. (*Denton* v. *Jackson*, 2 Johns. Ch. 325; *Gaskill* v. *Dudley*, 6 Met. 546; *Chase* v. *Merrimack*, 19 Pick. 564; *Riddle* v. *Proprietors, etc.*, 7 Mass. 187; *Brewer* v. *New Gloucester*, 14 Id. 216; *M. Bank* v. *Cook*, 4 Pick. 414; *Adams* v. *Wiscasset Bank*, 1 Greenl. 361; *Fernald* v. *Lewis*, 6 Id. 264; *Attorney General* v. *Exter*, 2 Russell, 53; *Beardsley* v. *Smith*, 16 Conn. 368; *Beers* v. *Ralsford*, 3 Day, 159; *Fuller* v. *Hampton*, 5 Conn. 417; *McCloud* v. *Selby*, 10 Id. 390, 395; *Pillstown* v. *Plattburg*, 18 Johns. 418; *Jansen* v. *Ostunder*, 1 Cow. 670; *Todd* v. *Birdsell*, Id 260; *Olney* v. *Wicks*, 18 Johns. 125; *Brunswick* v. *Dunning*, 7 Mass. 447; *Rumford* v. *Wood*, 13 Id. 198; *Hempstead* v. *Hempstead*, 2 Wend. 109.)

The English authorities maintain the same doctrine as to the liability of *quasi* corporations to be sued. (*Nowell* v. *Worcester*, 25 E. L. & E. 507; *Smart* v. *West Ham Union*, 30 Id. 560; *Taylor* v. *C. Gas Co.*, 29 Id. 516.)

IV. If the Board of Supervisors is liable to be sued for any cause, we have a judgment against it which is conclusive—the judgment of a Court of competent and general jurisdiction, and this Court cannot go behind the judgment to inquire into the cause of action, or the regularity of any of the proceedings. (*Brickhead* v. *Brown*, 5 Sandf. 134; *Pierson* v. *Catlin*, 18 Vt. 77; *Foster* v. *Wells*, 4 Texas, 101; Greenleaf's Evidence.)

*S. W. Holladay*, for Respondent.

The brief of appellant's counsel is directed to the support of the single proposition that the Board of Supervisors of the county of San Francisco was a corporation or body politic. From this proposition he claims the conclusion that if the Board of Supervisors is a corporation, it represents in itself the county or the people thereof, and is therefore liable to a suit for the debts of the county.

On this proposition, and the conclusion therefrom, defendant takes issue. A careful examination of Chapter 70 of the Acts of 1851, under which the Board was organized, must satisfy the Court that it was not the *intention* of the Legislature to invest the Board of Supervisors with corporate powers, in the general sense of that term.

The mere fact that the law authorizes a Board of Supervisors " for the county of San Francisco," does not necessarily constitute them a corporation. Section seven of the act limits their powers and prescribes their duties. So also do other laws limit, define and prescribe the duties of all the various other officers of the county, including provisions for their successors, but no one claims that any one or all of the other county officers are corporations for any purpose.

It is provided in section one, that " there shall be within and for the county of San Francisco a Board of Supervisors," etc.

" Sec. 7. The Board of Supervisors shall have power, with the consent of a majority of all its members, to make such orders concerning the corporate property of the county as they may deem expedient, to sell or otherwise dispose of the same, appropriating the proceeds thereof to the use of the county ; to audit the accounts of all officers having the management, collection and disbursement of all moneys belonging to the county ; to examine, settle and allow the accounts chargeable against the county, to levy and collect an annual tax for the payment of the accrued debts of the county ; to sue and defend on behalf of the county," etc.

Sec. 10. Each member of the Board of Supervisors is paid " for his services for each day's necessary attendance on the business of the county the sum of three dollars."

From this it would seem that it could not be " the corporate property of the county," and at the same time the corporate property of the Board, nor could the " moneys belonging to the county " be at the same time the moneys of the Board. Nor could the Board of Supervisors lawfully " examine, settle and allow all accounts chargeable against the county," and at the same time examine, settle and allow the same against themselves. Nor could they be " the accrued debts of the county," and at the same time " the

accrued debts" of the Board of Supervisors. Nor could the Board "sue and defend on behalf of the county," and at the same time, and for the same thing, sue and defend in the name of the Board of Supervisors in its own corporate right.

A corporation is the mere creature of law, existing only in contemplation of law, possessing only those properties which the charter of its creation confers upon it, either expressly or as incidental to its existence. This statute under which the Board of Supervisors was organized, (together with the act of 1850, defining the county limits of San Francisco) is the only law upon the subject, and we look in vain for any word or intimation there that the Legislature meant to confer upon that Board any corporate powers; but on the contrary, they seem to be the public agents to perform the financial and municipal functions of the legal ideality therein described as the "county." The act contemplates "corporate property of the county," but not of the Board; also "moneys belonging to the county," but not to the Board; also "accounts chargeable against the county," but not against the Board; also "accrued debts of the county," but not of the Board; also suits by or against the county, which the Board had power to bring and defend. The statute nowhere, either by express words nor by fair implication, invests the Board of Supervisors with title either to money or property, but on the contrary, contemplates the property as "corporate property of the county, and moneys belonging to the county, and accrued debts of the county," as distinguished from those of the Board, the latter being the public agent intrusted with the administration of the affairs of the county, the real principal.

The Board of Supervisors would be liable to mandamus and other remedial process to compel them to perform certain duties enjoined upon them by law; probably they would also in their associate capacity as a Board be liable to injunction to restrain them from the exercise of unwarrantable powers tending to injure individuals, or *certiorari*, in proper cases. Such suits would operate to control and restrain them within the limits of their proper legal functions.

From this analysis of the statute, it is apparent that the county was the real party, and the Board of Supervisors was its organ, agent or instrument by which the county, the real principal, spoke

and acted. If this is so, then a judgment rendered against the Board, the agent, could not affect the principal, and is no evidence in a suit against the principal, based upon the judgment.

It is no argument for plaintiff to say, that at the time he sued the Board he could not sue the county. On the contrary, if the law denies him the right to sue the county, for the reasons stated in the opinion of the Court in *Hunsacker* v. *Borden* (5 Cal. 288) that " a county cannot sue or be sued, a county government is a portion of the State government, and the county debt created by authority of law is a part of the public State debt, the sovereign cannot be sued in whatever form she may owe, unless by her own consent," then, certainly, on this authority, if the county for these reasons could not be sued directly, the Court will not tolerate the plaintiff to attack the sovereign effectively by indirection, for it is claimed by plaintiff in express terms that the judgment against the Board " was in effect a judgment against the county of San Francisco."

If a county cannot be sued for a " county debt created by authority of law, because it is a portion of the public State debt," then is the case strengthened where plaintiff presents a claim which is neither a debt or the slightest evidence of a debt against the county; and if he cannot sue the real debtor, *i. e.*, " the county government, which is a portion of the State government," for a debt claimed to be due from the county, could he sue some agent acting for this department of the State government, and thus by indirection recover " in effect a judgment against the county of San Francisco ? "

Taking the above decision as the established law of this State, the county could not be sued indirectly; a judgment against the County Treasurer by default would have been equally as effective to bind the county, for that officer is more immediately connected with the State treasury, and also with the county treasury, which " is one of the subordinate treasuries." The plaintiff might with the same propriety have sued the Legislature for the debt of the State, claiming against it as a corporation " representing the interests and political powers of the State," as that body has many of the " powers and privileges of corporations not possessed by individuals or part-

nerships." Would any one claim that a judgment by default in a suit against the Legislature on a debt of the State, would be in effect a judgment against the State? Would such a judgment support an action against the State?

It is conceded, that the meaning of sec. 31, art. 4 of our Constitution is, " that corporations for municipal purposes may be created by special act," but the real questions to be solved are—first, was the Board of Supervisors intended in the act to be such a corporation; and second, being a creature of the statute, was it in fact vested by the statute with all the attributes claimed for it by plaintiff? Our review of the act organizing the Board answers these questions negatively.

But if the Board was a corporation in any sense, or for any purpose, and as such, liable to be sued, it was not liable to suit for the accrued debts of the county, or for those of any other party not its own. Sec. 5, art. 11, of the Constitution, cited by plaintiff's counsel, authorizing the Legislature to provide for the election of a Board of Supervisors in each county, " who shall jointly and individually perform such duties as may be prescribed by law," shows no intention, either in this clause of the Constitution nor in the statute, imposing the liability upon the Board to be sued either collectively or individually for the debts of the county.

Counsel claims that there is no distinction made in the Constitution between " county and town governments." Will he contend, then, that he might have maintained a suit against the late Common Council of the city of San Francisco, and that a judgment by default in such a case would have been " in effect a judgment against the city!" The Act of 1850 concerning corporations, cited by counsel, has no application to any but commercial corporations, as distinguished from municipal, as shown by section one, " and for the transfer of its stock." Sec. 4. " When the whole capital of a corporation shall not have been paid in, etc., each stockholder, etc." Sec. 13. Not lawful to make dividends, etc. Sec. 32. Each stockholder of any corporation individually and personally liable, etc.

Counsel argues that the Board of State Prison Commissioners, State Capitol Commissioners, Board of Trustees of the Insane Asylum, Commissioners of Stamp Duties, etc., are municipal corpora-

tions within the Constitution, and created by special act.    Granted. What follows?    They all represent the State.    You cannot sue the State, as there is no law authorizing it.    Yet as these are all corporations under the Constitution and law, according to the argument, they are liable to be sued.    Does counsel insist that a judgment by default in a suit against each or any of these bodies, would be " in effect a judgment against the State ? "    Would the transcript of such a judgment support an action brought directly against the State ?    Clearly not.    Nor would it support an action against the State, should an act be passed " prescribing the mode of commencing and maintaining actions against the State," instead of counties, ·for the reason that the judgment being illegal was void, and no evidence of debt in an action against the State.

The authorities cited by appellant are cases where suits have been sustained against corporations specially created by name, and so made liable to suit, or under general statutes, or upon immemorial usage and custom.    Not one of them supports the position assumed by plaintiff.

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. and COPE, J. concurring.

In June, 1850, the Court of Sessions of the county of San Francisco issued a certificate over the signatures of its Judges to one Gillespie, to the effect that there was due to him from the county on the first of July, 1851, the sum of $1000, as the consideration of certain premises purchased for the use of the county, and necessary for its purposes, by order of the Court, under authority of law, and by virtue of a contract between him and the Court; the said sum to bear interest after maturity, at the rate of three per cent. a month, payable semi-annually; and the county to have the privilege of paying the principal at any time before maturity, upon fourteen days' notice to Gillespie or to his assigns.    The certificate was transferred to the plaintiff, and upon it, in March, 1854, he brought suit in the District Court of the Seventh Judicial District against the Board of Supervisors of San Francisco county; caused the summons, with a copy of the complaint, to be served upon its chairman; and in April following recovered judgment by default

for the amount claimed. It is upon this judgment·that the present action is based. To the introduction of its record objection was made upon several grounds; and among others, upon the ground that the judgment against the Board of Supervisors was not a judgment against the county of San Francisco. The Court sustained the objection and excluded the record, and no other evidence being offered, gave judgment for the defendant. The ruling in this respect constitutes the alleged error for which a reversal is sought.

We.are of opinion that the ruling was correct. The Board of Supervisors was a body clothed with certain limited powers for the management of the affairs of the county, and could only be subjected to process in ordinary common law actions, for claims against the county, in virtue of express provisions of law. We say *ordinary* common law actions to distinguish its liability, in this particular, from the liability to which all inferior bodies, exercising powers for public purposes, are subject, independent of statute. All such bodies, without any special legislative provision by the general law, are subject, with certain exceptions, to the process of *mandamus*, to enforce the performance of the duties devolved upon them, and to the writ of *certiorari*, for the review of their acts, when partaking of a judicial character, and.in other ways are· within the control of judicial proceedings. But the liability of such bodies to be sued in their official character, in ordinary common law actions, for claims against the public, county or village they represent, is of a very different character, and can only arise from express statutory provision. There was no such provision with reference to the Board of Supervisors of San Francisco county at the time the judgment of the plaintiff was rendered. The Act of 1851, creating the Board, did, it is true, authorize it to " sue and defend on behalf of the county ; " but these terms did not authorize it to bring suits on behalf of the county in its own name ; and if they did confer such authority, the inference of counsel does not follow, that the Board was liable to be sued to the same extent that it could sue. The Board was a body acting for the county, empowered to make orders concerning " the corporate property of the county," and to conduct legal proceedings, whenever they became necessary, in .the name of the county. Its position was, in some

respects, like that of an agent holding a power of attorney, " to sue and defend on behalf of his principal." The case of *Hunsacker* v. *Borden* (5 Cal. 288) is not in conflict with this view. That case only decided, and that, too, incidentally, that a county could not " sue or be sued, except when specially permitted by statute." But even if we admit the power of the Board to institute legal proceedings in its own name, the inference of counsel does not follow, as we have observed. Liability to suit has no necessary connection with ability to sue. The State can sue in all cases, but she is only subject to be sued in the instances specially provided by law. Nor does the power to defend on behalf of the county justify the conclusion that the Board could be sued directly for a claim against the county. In a variety of ways the Board might have been required to defend for the protection of the property or interests of the county, without appearing in its own name ; as, for instance, in actions of ejectment brought against tenants of the county property. In the case of *Burgoyne* v. *The Supervisors of San Francisco,* (5 Cal. 9) the question of the right to sue the Board directly for a claim against the county was not raised ; and the decision was on the authority of the Court of Sessions to make the purchase, for which the evidences of liability involved were issued.

Our conclusion is, that the judgment against the Board was not evidence of any claim against the county, and that the ruling of the Court in excluding the record was correct.

Judgment affirmed.